**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 3:15cr13-1 |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| **EDDIE PACE,** | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is Defendant Eddie Pace's motion to suppress physical evidence. The court held a suppression hearing on September 30, 2015. The parties have briefed their respective positions, and the matter is ripe for disposition.

**Background**

On the date of defendant's arrest, January 14, 2015, the government seized from him, without a warrant, an amount of United States currency. The government contends that this currency included money the FBI used to purchase heroin from the defendant in a "controlled buy." The defendant now seeks to suppress this currency and prevent its use against him. The facts surrounding this seizure are as follows:

Local and federal authorities had defendant under investigation for more than a year on the suspicion of involvement in the illegal drug trade. (Doc. 171, Notes of Testimony, Suppression Hearing, Sept. 30, 2015

(hereinafter "N.T.") at 4-5).  As part of this investigation, the FBI made a "controlled buy" of drugs from the defendant on January 14, 2015.  (Id.)  A person working undercover for the government bought heroin from the defendant using currency that the FBI had "prerecorded" or photocopied.  (Id. at 4-6).  The authorities did not arrest defendant at that time.

On that same day, only an hour later, Officer Chris Shelly of the Stroud Area Regional Police Department moved to arrest the defendant on a domestic relations warrant unrelated to the drug investigation.  (Id. at 3, 8-9).[1]  Officer Shelly telephoned the defendant, who told Shelly his location- the Tobyhanna Credit Union.  (Id. at 6).  Shelly went into the credit union and saw the defendant.  (Id.)  He asked the defendant to go outside with him.  (Id. at 7).  When outside, Shelly arrested defendant on the domestic relations warrant.  (Id. at 8-9).

While Domestic Relations Officers, who had arrived on the scene to assist Officer Shelly, placed defendant into a car after his arrest, defendant indicated that he had left several personal items in the bank.  (Id. at 12, 32-33).  The items included a wallet and a cellular telephone.  Shelly returned

---

[1]Shelly knew the details of FBI investigation including information about the "controlled buy," but the warrant he arrested defendant on was unrelated to that investigation. (Id. at 14).

to the bank to retrieve the items, and he observed that the wallet contained a large stack of cash.  (Id. at 15).[2]  Eventually, Shelly compared the serial numbers of the money found in the wallet with the serial numbers of the money used in the controlled buy. (Id. at 18-19).  Three hundred dollars of the currency in defendant's wallet matched the currency used in the controlled buy.  (Id. at 37).

The government filed a three count indictment against Defendant Eddie Pace in February 2015.  (Doc. 1, Indictment).  On March 31, 2015, the government filed a twelve-count Superseding Indictment adding six defendants to the case.  (Doc. 26).   With regard to Defendant Pace, the Superseding Indictment charges the following:

Count 1 - conspiracy to distribute and to possess with intent to distribute in excess of 100 grams of heroin and more than 500 grams of cocaine from in or about 2012 to the date of the indictment, in violation of 21 U.S.C. § § 841(a)(1); 841(b)(1)(B) and 846.  The conspiracy involved the defendants traveling to New Jersey, Hazleton, Pennsylvania and elsewhere to obtain controlled substances.  They then returned to Monroe County and distributed the controlled substances for money and/or other

---

[2]Shelly had also noticed these items previously when he entered the credit union to speak with the defendant.  (Id. at 12).

valuable consideration.  (Doc. 26, Superseding Indictment);

Count 3 - distribution and possession with intent to distribute heroin on November 6, 2014 in violation of 21 U.S.C. § 841(a)(1); and

Count 5 - distribution and possession with intent to distribute heroin on January 14, 2015 in violation of 21 U.S.C. § 841 (a)(1).  (Id.)

On April 14, 2015, United States Magistrate Judge Joseph F. Saporito arraigned defendant on the Superseding Indictment.  (Doc. 79).  Defendant entered a plea of not guilty.  (Doc. 80).

Subsequently, defendant filed the instant motion to suppress physical evidence.  (Doc. 98).  The court held a hearing on the matter on September 30, 2015.  (Doc. 163).  The court ordered counsel to file supplemental briefs after the hearing, and the briefs have been filed.  The matter is thus ripe for disposition.

**Discussion**

The defendant seeks to suppress the currency seized on January 14, 2015 and preclude it from use at trial.   Defendant argues, generally, that Officer Shelly seized the money without a warrant and without an exception to the warrant requirement.  Therefore, the evidence should be suppressed.

The Fourth Amendment to the United States Constitution prohibits unreasonable search and seizures. U.S. CONST. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]") Generally, for a search or seizure to be reasonable, it needs to be performed pursuant to a warrant or an exception to the warrant requirement must be present.

In the instant case, it is undisputed that the Shelly made a warrantless seizure and investigation of the wallet and money found therein. The government argues that a warrant is not necessary due to the following exceptions to the Fourth Amendment warrant requirement: 1) plain view exception; 2) inventory search exception; 3) transportation of arrestee exception; and 4) the inevitable discovery exception. Defendant, on the other hand, argues that Officer Shelly did not perform a lawful a lawful inventory search and did not seize the evidence in accord with the plain view exception. We shall limit our discussion to the plain view exception as we find that to be dispositive.

The plain view exception to the warrant requirement allows government authorities to seize evidence that they see without a warrant

under certain circumstances. "The Supreme Court has allowed officers to seize incriminating evidence in plain view during the course of a lawful search because such a seizure does not involve an intrusion on privacy. If the interest in privacy has been invaded, the violation must have occurred before the object came into plain view." U.S. v. Menon, 24 F.3d 550, 559 (3d Cir. 1994) (internal quotation marks and citation omitted).

For the plain view exception to apply, three elements must be met.

> First, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Second, the incriminating character of the evidence must be immediately apparent. Third, the officer must have a lawful right of access to the object itself.

Id. (internal quotation marks and citation omitted).

Here the parties do not dispute the first and third elements of the plain view exception. The parties do disagree, however, as to the second element, whether Officer Shelly became immediately aware of the incriminating character of the wallet/money. "[T]he 'incriminating nature' of an object is generally deemed apparent where police have probable cause to believe it is evidence of crime." U.S. v. Scarfo, 685 F.2d 842, 854 (3d Cir. 1982). "Probable cause" exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." U.S.

Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (internal quotation marks and citation omitted).  A probable cause determination is made based upon the totality of the circumstances.  U.S. v. Ritter, 416 F.3d 256, 262 (3d Cir. 2005).

Instantly, the totality of the circumstances support a finding of probable cause.  Officer Shelly knew that for over a year Defendant Pace had been the subject of an ongoing drug investigation.  He further knew that an hour earlier, Defendant Pace had been involved in a controlled buy of heroin wherein Pace received three hundred dollars in cash.  He knew that investigators had recorded the money that they had used in the controlled buy.  Shelly noticed that the defendant's wallet, which he had left on a desk or table in the bank, was "stacked up" with money.  (N.T. at 31).  Based on the totality of the circumstance a fair probability existed that the wallet contained contraband or evidence of a crime.  Thus, Officer Shelly immediately became aware of the incriminating nature of the money, and the plain view exception to the warrant requirement applies.

Defendant argues that the mere presence of money on a target of a criminal investigation does not convert that money into contraband.  We agree, but here, as set forth above, there was more than the mere

presence of money.

As the Third Circuit Court of Appeals has noted:

> A large amount of cash, in and of itself, is not *per se* incriminating. . . . The Seventh Circuit crystallized the issue in United States v. Cervantes, writing: "although a wad of cash is not in itself a suspicious object, a wad of cash in the hands of a person who the police have good reason to believe just received it in exchange for a delivery of illegal drugs is suspicious and indeed enough so to give the police probable cause to believe it evidence of criminal activity." 19 F.3d 1151, 1153 (7th Cir. 1994).

U.S. v. Law, 384 F. App'x 121, 122-23 (3d Cir. 2010)

In the present case, the defendant had a large amount of cash visible in his wallet, which the police had good reason to believe he had received within the hour for a drug transaction.[3] Seeing the money and knowing all

---

[3] Circumstances can exist where the seizure of a wallet does not fall within the plain view exception. See, e.g., U.S. v. Rivera-Padilla, 365 F. App'x 343 (3d Cir. 2010). The facts before the court are distinguishable this case. In Rivera-Padilla, federal authorities went to the defendant's residence to arrest him on various immigration charges. Id. at 344. After making the arrest, a federal agent found a wallet on the defendant's bed. He seized it and searched its contents. Id. The court found that the seizure and search of the wallet was unreasonable because no incriminating evidence had been in plain view. Id. at 346. "All that was in plain view was an ordinary wallet whose contents, in which [defendant] retained a reasonable expectation of privacy, were not visible." Id. In the instant case, more than an ordinary wallet was in plain view. Officer Shelly had probable cause that the wallet contained evidence of a crime.

the facts and circumstances surrounding the investigation of the defendant by the FBI provided Officer Shelly with probable cause to believe that the wallet contained evidence of a crime. Thus, we find that the motion to suppress should be denied.

**Conclusion**

In conclusion, Officer Shelly seized the money at issue with probable cause to believe that it was evidence of crime. As such, its incriminating nature was apparent and the plain view exception to the warrant requirement applies. The defendant's motion to suppress will be denied. An appropriate order follows.

**Date: Nov. 13, 2015**         **s/ James M. Munley**
                                **JUDGE JAMES M. MUNLEY**
                                **United States District Court**